UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DEAN BLANCHARD SEAFOOD, INC.                    CIVIL ACTION

VERSUS                                          NO: 06-10800

ACADIAN INSURANCE SERVICES                      SECTION: J(1)
ET AL

## ORDER AND REASONS

Before the Court are the cross motions for summary judgment
(Rec. Docs. 34 & 36), filed in lieu of the November 10, 2008
bench trial cancelled by this Court's order of October 17, 2008
(Rec. Doc. 33), by Plaintiff Dean Blanchard Seafood Inc. ("DBS")
and Fidelity National Property and Casualty Insurance Co.
("Fidelity"), in its capacity as the WYO carrier in the National
Flood Insurance Program ("NFIP").

## PROCEDURAL HISTORY AND BACKGROUND FACTS

DBS's claims arise out of the events of Hurricane Katrina.
DBS operates a retail/wholesale seafood business in Grand Isle
Louisiana, for which it obtained a Standard Flood Insurance
Policy ("SFIP") under the NFIP through Fidelity as the WYO
carrier, effective October 17, 2004 through October 17, 2005.
The SFIP coverage limit for DBS's property was $250,000.

Hurricane Katrina caused flooding to the insured premises on
or about August 29, 2005.  Fidelity's independent adjuster
initially inspected the DBS property and determined that the
building had been flooded to a depth of approximately nine feet.
However, the adjuster also indicated that the building was

"entirely" over water, and thus not covered under the SFIP.

The sole matter in dispute in these cross-motions for summary judgment is whether, under the provisions of the SFIP and the relevant provisions of the NFIP, the DBS "building" was "entirely over water" and thus not covered under the policy.

The SFIP provides coverage for a **"building**," defined as "[a] **structure** with two or more outside rigid walls and a fully secured roof, that is affixed to a permanent site." 44 C.F.R. pt. 61, App. A(2), Art. II(B)(6)(a) (2005)[1] (emphasis added). However, the SFIP excludes coverage for "[a] building, and personal property in it, located **entirely** in, on, or over water or seaward of mean high tide." Id. at Art. IV(A)(2) (emphasis added). In addition, the SFIP does not cover "[t]hose portions of walks, decks, driveways, patios, and other surfaces, all whether protected by a roof or not, located outside the perimeter, exterior walls of the insured building." Id.

The building at issue consists of a construction with exterior walls and a roof built on a concrete slab. The concrete slab is located partly on land and partly over water. While the concrete slab does sit in part on dry land, the exterior walls of the building are approximately ten feet on the water side of the bulkhead over which the concrete slab extends. The land-side of the concrete slab was used for trucks to pull up to loading docks

_____

[1] The Court cites to the 2005 SFIP because that is the version that was in effect at the time of this case. However, the 2008 SFIP includes the same relevant definitions as the 2005.

and ramps on the land side of the DBS facility, while the water-side of the slab was the actual foundation on which the facilities were built.

The crux of the parties' arguments is whether the underlying concrete slab, which admittedly extends over both land and water, constitutes an integral part of the "structure" of the building, such that the fact that the slab itself is partially over land renders the whole "building" not "entirely" over water.

## THE PARTIES ARGUMENTS

Fidelity argues that DBS's building is entirely in, on, or over water and thus is not covered under the SFIP. As an initial matter, Fidelity cites the fact that the SFIP is written by the federal government, administered and regulated by a federal agency (FEMA), and authorized by Congress. As such, the NFIP is subject to the Appropriations Clause of the Constitution, which provides that "[n]o money shall be drawn from the Treasury, but in consequence of appropriations made by law." U.S. Const. Art. 1, § 9, cl. 7. Accordingly, Fidelity argues that strict compliance with the NFIP is required under Fifth Circuit law. Richardson v. Am. Bankers Ins. Co. Of Fla., 2008 WL 510518 (5th Cir. 2008). As such, Fidelity argues that the terms and language of the SFIP must be strictly construed.

Based on the premise that insurers under the NFIP can only make payments authorized by Congress and that the SFIP must be strictly construed, Fidelity argues that DBS's proposed

definition of "building" under the SFIP is inconsistent with the terms of the SFIP and NFIP.  Fidelity points to three different provisions in the SFIP to support its argument that DBS's building should not be covered.  First, the portion of the concrete slab outside the exterior walls is expressly not covered under the SFIP: "[t]hose portions of walks, decks, **driveways**, patios, and **other surfaces**, all whether protected by a roof or not, **located outside the perimeter, exterior walls of the insured building**" are not covered under the SFIP.  44 C.F.R. pt. 61, App. A(2), Art. II(B)(9) (2005) (emphasis added).  Second, the bulkhead and piers upon which the slab is constructed are expressly not covered under the SFIP: "fences, retaining walls, seawalls, **bulkheads, wharves, piers,** bridges and docks" are not covered under the SFIP.  Id. at (B)(12) (emphasis added).  Finally, Fidelity argues that the DBS "building," which Fidelity asserts under the SFIP definition consisted solely of the "structure with two or more outside rigid walls and a fully secured roof . . . affixed to a permanent site," was itself "located entirely . . . over water" and thus should not be covered under the SFIP.  44 C.F.R. pt. 61, App. A(2), Art. II(B) & Art. IV(A)(2) (2005).  As a result of all three of these exclusions, Fidelity argues that the DBS property should not be covered under the SFIP.  In sum, Fidelity argues that "[i]t is logically consistent that if coverage is not afforded for [surfaces located outside perimeter walls, bulkheads, or piers]

4

then such items should not be considered for extending coverage to the building that is over water." Def. Memo Supp. Summ. J., 14.

Finally, Fidelity argues that to the extent the SFIP may be construed to cover the concrete foundation as an attachment to or extension of the DBS building, the SFIP specifically provides for coverage of attachments only if they are "in contact with the building by means of a rigid exterior wall, a solid load-bearing wall, a stairway, an elevated walkway, or a roof." 44 C.F.R., Pt. 61, App. A(2), Article III(A)(3) (2005). Fidelity points out that this provision does *not provide coverage* for an attachment or extension connected to a building by means of a concrete slab. As such, Fidelity argues that even under an "attachment" theory, DBS's building is not covered under the SFIP.

In opposition, DBS argues that the SFIP's definition of "building" boils down to the word "structure," and as such should not be limited strictly to constructions consisting of "two or more outside rigid walls and a fully secured roof . . . affixed to a permanent site." Rather, DBS asserts that the SFIP definition of "building" should be read to include any unified "structure," even if that unified structure consists of *more* than just "two outside rigid walls" and a "fully secured roof" that are "affixed to a permanent site." To state this argument differently, DBS contends that the "structure" insured by the SFIP consists of "the entire building" together with "all of its

5

component parts, including but not limited to its foundation, walls, and roof" because all these parts are "physically and functionally interconnected so as to best serve" DBS's business of wholesale seafood retailing.  Pl. Memo Supp. Summ. J., 2. Specifically, DBS argues that the land-based portion of the concrete slab was functionally vital to its operations because it "serve[d] as an adequate support for pick-up trucks wishing to pull into the four walls of the structure," provided  "a loading area . . . [for loading] shrimp into 18-wheelers that backed up to the concrete foundation," and "provided additional support for the overall structure because 6 feet of the concrete structure foundation was permanently affixed to the land."  Pl. Memo Supp. Summ. J., Decl. Of DBS at ¶2a, Rec. Doc. 36-6.  Under this analysis, because the concrete foundation acts as a functional component part of DBS's building and is itself partially over land, the building as a whole structure is *not* "entirely" over water.  As such, DBS agrees with Fidelity that the SFIP should be strictly construed.   However, DBS argues that strict construction of the "entirely over water" language requires a finding of coverage, because DBS's "building," insofar as the building consists of the entire "structure" of the property including component parts, is not "entirely" over water.

Further, DBS contests Fidelity's "attachment" argument by reiterating that the concrete slab is *not* an attachment, but is rather an integral and functional component part of the building

as an entire structure.

In the alternative, DBS argues that if its building is not covered under the plain language of the SFIP definition of "building," the SFIP definition is at least ambiguous.  As such, under federal common law, DBS contends that any ambiguity in the SFIP should be construed in favor of DBS as the insured and against Fidelity as the insurer.

## DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If that burden is met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986).

### B.    Standards of Construction of the SFIP

Congress created the NFIP to provide insurance coverage at or below actuarial rates.  Marseilles Homeowners Condominium Ass'n Inc. v. Fidelity Nat. Ins. Co., 542 F.3d 1053, 1054 (5th Cir. 2008); Gowland v. Aetna, 143 F.3d 951, 953 (5th Cir.1998). The Federal Emergency Management Agency (FEMA) operates the NFIP,

which is supported by the federal treasury.  Marseilles, 542 F.3d
at 1054.  An SFIP issued under the NFIP is "a regulation of
[FEMA], stating the conditions under which federal
flood-insurance funds may be disbursed to eligible
policyholders." Marseilles, 542 F.3d at 1054 (quoting Mancini v.
Redland Ins. Co., 248 F.3d 729, 733 (8th Cir.2001)).  FEMA sets
the terms and conditions of all SFIPs.  Marseilles, 543 F.3d at
1054.  An SFIP may be issued directly by FEMA or through private
insurers, which are called "Write Your Own" (WYO) companies.  Id.
Pursuant to statute, WYO insurance companies are fiscal agents of
the United States. Id. (citing 42 U.S.C. § 4071(a)(1)).  As a
result of the federal regulation and funding of the NFIP, the
provisions of the SFIP "must be strictly construed and enforced."
Gallup v. Omaha Prop. & Cas. Ins. Co., 282 Fed. Appx. 317, 322
(5th Cir. 2008).

     As such, "under the federal common law, the SFIP is
construed using standard insurance law principals . . . according
to its plain, unambiguous meaning" to allow for "uniform
[interpretation] throughout the country."  Rodgers v. Allstate
Ins. Co., 2007 WL 1029480, *4 (E.D. La. 2007) (citing Sodowski v.
Nat'l Flood Ins. Program, 834 F.2d 653, 655 (7th Cir. 1987) &
Nelson v. Becton, 929 F.2d 1287, 1291 (8th Cir.1990)).
"Nevertheless, ambiguities should be construed in favor of the
insured and against the insurer." Rodgers, 2007 WL 1029480, *4
(citing, Aschenbrenner v. United States Fidelity & Guar. Co., 292

8

U.S. 80, 84-85 (1934)).  Therefore, "if the meaning of [an SFIP]
is doubtful and the language used is susceptible of different
constructions, the one most favorable to the insured is adopted."
Hanover Bldg. Materials, Inc. v. Giuffrida, 748 F.2d 1011, 1013
(5th Cir. 1984).  However, "the rule favoring the insured where
ambiguity exists should not be applied automatically" because
"[i]nsurance contracts are to be construed consonant with the
apparent objective and intent of the parties."  Id. (citations
and quotations omitted).  Nonetheless, if the policy's meaning
remains unclear, "the policy is generally construed in favor of
the insured in order to promote the policy's objective of
providing coverage."  Id.

**C.   The SFIP and the Facts of this Case**

**(1) The addition/extension analysis**

The parties are correct in their assertion that the issue
before the Court is one of first impression, as no court in the
Fifth Circuit or any other circuit has ruled on the issue of
whether a slab foundation that lies partially on land and
partially over water constitutes part of a structure for purposes
of coverage under the SFIP.  However, two cases have analyzed
similar factual scenarios in the context of the SFIP.

First, the First Circuit in Atlas Pallet, Inc. v. Gallagher
considered claims arising out of an SFIP covering plaintiff's
facilities in Rhode Island.  725 F.2d 131, 133 (1st Cir. 1984).
The building covered under the SFIP was located on the bank of a

9

river, and its foundation wall was built thirty feet into the river. Id. A milldam extended from the foundation wall across to the opposite bank of the river. Id. The foundation wall and milldam combined to impound water from the river for use in the plaintiff's sprinkler system. Id. The river flooded, causing damage to the milldam, foundation wall, and watercrib that collected water for the sprinklers. Id. The plaintiff sought recovery for damages to all three structures under the SFIP, but the district court denied coverage. Id. at 134. The First Circuit affirmed the district court's denial of coverage under the terms of the SFIP. Id. at 139.

However, the Atlas Court's analysis as to whether the milldam constituted an addition or extension to the "building" covered under the SFIP is relevant to the case before this Court. The First Circuit held that "[i]t is necessary, in construing the terms 'additions' and 'extensions,' to consider the connection of the alleged addition or extension with the use and purposes of the insured building." Id. at 136. Therefore, the Atlas Court held that the issue of coverage turned on "the relative location of the structures, their accessability, and adaptability to some common end" in the relevant circumstances of the case. Id. Based on this analysis, the Atlas Court held that the milldam was not an extension of the plaintiff's building because it merely supplied water for the fire sprinklers, and was not "indispensably connected or related to the purpose or use" of the main building. Id. As such, the Atlas Court found that there

10

was no "community of use" between the milldam and the main
building.  Id. at 137.

Second, the Tenth Circuit followed the Atlas Court's
analysis in Sandia Oil Company, Inc. v. Beckton.  889 F.2d 258
(10th Cir. 1989).  The Sandia case involved claims under an SFIP
covering a gas station that consisted of "a large concrete
foundation . . . completely covered by a canopy . . . supported
by pillars sunk into [the] concrete foundation," as well as a pay
booth with four walls and a roof that was also under the canopy
and constituted a "building" under the SFIP.  Id. at 259.
Plaintiffs filed a claim under the SFIP after a flood damaged the
concrete foundation, but the insurer denied coverage on the
grounds that only the pay booth was covered.  Id.  The district
court granted plaintiffs an award under the SFIP, finding that
the concrete foundation constituted an addition or extension
covered under the SFIP, despite an exclusion for "portions of
walks, driveways, and other paved or poured surfaces outside the
formulative walls of the building."  Id. at 260.  The Tenth
Circuit affirmed, finding that  "[t]he pertinent coverage
provisions of the [SFIP] [were] ambiguous as applied to the facts
and circumstances of this case, in view of [the plaintiff's]
unique facilities and operation."  Id.  Specifically, the Sandia
Court held that "the canopy and its concrete foundation and the
pay booth comprise one whole functionally integrated unit,
operation, and structure."  Id.  Furthermore, the Tenth Circuit

11

found that there was a "definite and necessary connection, as contemplated by the parties to the [SFIP], between the canopy and its concrete foundation and the use and purposes of the pay booth, allowing the canopy and its concrete foundation to be considered an integral part, addition, or extension of the pay booth." Id. In its decision, the Tenth Circuit cited the Atlas case for support in its findings. Id.

While these cases are factually similar and while their analysis initially appears applicable to the case before this Court, crucial distinctions exist that render these decisions unpersuasive. First, the Atlas case involved a structure that was built over water before September 30, 1982. Under the express terms of the current SFIP, coverage does not extend to a building located entirely in, on, or over water unless it was built prior to September 30, 1982. Thus, the SFIP at issue in Atlas was a significantly different policy with respect to the "over water" exclusion. Second, the SFIP in effect during the relevant period of the Sandia case included an addition/extension provision that was significantly broader than the one applicable in the current SFIP.[2] Third, and most importantly, both the

---

[2] The relevant SFIP provision at issue in the Sandia case provided simply that "[w]hen the insurance under [the SFIP] covers a building, such insurance shall include additions and extensions attached thereto." 44 C.F.R. pt. 61, App. A(2) (1984). The 2005 SFIP's addition/extension provision allows coverage for additions and extension only when they are "attached to and in contact with the building by means of a rigid exterior wall, a solid load-bearing interior wall, a stairway, an elevated walkway, or a roof." 44 C.F.R. pt. 61, App. A(2) (2005).

Atlas and Sandia cases involved disputes concerning whether an extension to an *indisputably covered building* was covered under the SFIP.  The facts of this case present the exact opposite question: whether a building for which *coverage is disputed* can overcome an exclusion based on the coverage of its *extension*.

Nonetheless, the "community of use" and "functional integration" analysis in both cases is relevant to the instant matter.  Although DBS argues that the addition/extension issue is irrelevant because the concrete slab is an integral part (note a mere attachment or extension) of its structure, the Atlas/Sandia analysis tends to support DBS's claims.  DBS argues that the concrete slab was a crucial component part of the entire structure of its facility.  As such, because the slab was functionally integrated with the other parts of the facility, it should be considered as part of the whole insured structure.  Accordingly, if the concrete slab can be considered as a functionally integrated "addition" or  "extension**"** of the entire structure, then the DBS property is not "located *entirely* in, on, or over water," and should be covered as a matter of strict construction of the SFIP.  Furthermore, despite the difference between the provisions in the 1984 and 2005 SFIP, the concrete foundation of the DBS facility was "in contact with the building by means of a rigid exterior wall" as required under the 2005 SFIP based on the fact that the walls of the DBS "building" were bolted into the concrete foundation.  Pl. Memo Supp. Summ. J.,

Decl. Of DBS at ¶2b, Rec. Doc. 36-6.

This analysis assumes that the DBS "building" would itself be covered under the SFIP in order for coverage to flow to the foundation as an extension.  However, the basis of DBS's argument requires a finding that the coverage of the concrete foundation, located partially on land, flowed to the "building," located over water.  Unfortunately, other provisions of the SFIP seem to preclude coverage of the concrete foundation individually, and of the "building" individually.  First, the provision that forms the crux of this case excludes coverage for a "building . . . located entirely in, on, or over water."   44 C.F.R. pt. 61, App. A(2), Art. IV(A)(2) (2005).  A "building" as defined by the SFIP is "a **structure** with **two or more outside rigid walls** and a fully secured roof, that is affixed to a permanent site."  44. C.F.R. pt. 61, app. A(2), Art. II(B)(6)(a) (2005) (emphasis added).  To the extent that the DBS "building" consists only of the actual walled structure, it is "entirely" over water and thus not covered under the SFIP.  Further, the SFIP excludes coverage of "**driveways**  . . . and **other surfaces** . . . located **outside the perimeter, exterior walls** of the insured building."  Id. at Art. II(B)(9).  As such, the portion of the concrete foundation that does sit over land is expressly not covered under the SFIP because it is a "driveway" or "other surface" not located within the walls of the DBS "building."  Therefore, taken individually, the slab on land itself would not be covered (as a driveway/other

surface outside the perimeter walls) and the "building" itself would not be covered (as it sits entirely over water).  If each individual component is not covered, then the entirety of the structure should not be covered under the SFIP.

### (2) DBS's "Structure" Analysis

Nonetheless, DBS has expressly *avoided* the addition/extension argument to support its claim.  Rather, DBS asserts that the "building" definition itself is the sole and determinative provision that should result in coverage.  Specifically, DBS asserts that the "building" definition of the SFIP should not be limited only to permanently fixed constructions with two or more walls and a roof.  Rather, DBS contends that the word "structure" in the SFIP definition of "building" requires that the definition include any permanently fixed construction that has at least two walls and a roof *as well as other structural aspects of the construction that are functional parts of the structure as a whole*.  Accordingly, DBS argues that since the concrete foundation is a functional part of the whole facility, it should be included as part of the "building" for purposes of coverage under the SFIP.  Basically, DBS argues that its "building," for purposes of the SFIP definition and the "entirely over water" exclusion, consists of the concrete slab partially on land as well as the walled and roofed structure and slab partially over water.

However, other exclusions in the SFIP undermine DBS's "structure" analysis. First, the "driveway/other surface" exclusion expressly refers to surfaces "whether protected by a roof or not, located outside the perimeter, exterior walls **of the insured building**."    44 C.F.R. pt. 61, App. A(2), Art. II(B)(9) (2005) (emphasis added). This exclusion suggests that the crucial factor for determining whether a construction constitutes a "building" under the SFIP is whether the construction is walled. As such, the language of the exclusion is not consistent with DBS's focus on the word "structure" in the "building" definition. Additionally, DBS's "structure" analysis, if taken to its limit, would require coverage of the bulkhead and pilings on which the concrete slab and walled construction partially sit because those support mechanisms would be functionally integral to the structure as whole. However, the SFIP clearly excludes coverage for "bulkheads [and] piers." Id. at Art. II(B)(12). Because those parts would not be covered on their own, they should not be covered under DBS's "structure" analysis. Finally, the definition of "building" in the SFIP has historically limited coverage to walled and roofed structures exclusively.[3] Furthermore, FEMA's own regulations provide that "'[s]tructure,' for insurance purposes, means: (1) A **building with two or more**

---

[3]  See, e.g., 44. C.F.R. pt. 61, App. A(2) (1989) (defining "building" as "a walled and roofed structure, other than a gas or liquid storage tank, that is principally above ground and affixed to a permanent site").

**outside rigid walls** and a fully secured roof, that is affixed to a permanent site."  44 C.F.R. §59.1 (2005) (emphasis added). Thus, the definition of "building" for SFIP purposes is clearly intended to include only structures actually enclosed by walls. Therefore, DBS's "structure" analysis is unavailing.

As a result, under either the "addition/extension" theory or DBS's "structure" definition analysis, DBS's argument for coverage, at least as it relies on the plain language of the SFIP, is unavailing.

### (3) Ambiguity in the SFIP Definition of Building

However, DBS argues in the alternative that the definition of "building" under the SFIP is ambiguous in light of the other relevant exclusions at issue in this case.  Simply put, DBS suggests that the very placement of flood coverage via an SFIP on the DBS facility by an experienced insurance agent indicates that the "building" definition and the "entirely over water" exclusion are ambiguous.  Furthermore, and in an echo of its "structure" analysis, DBS argues that the "common sense" definition of a building must include the building's functional component parts. As such, DBS argues that the SFIP is ambiguous in its definition of a "building" for coverage purposes, and that this ambiguity should be construed in favor of DBS as the insured.

The Fifth Circuit has affirmed an award of flood damages under an SFIP, after the WYO carrier's denial of coverage based on an exclusion, when the definition of a crucial term in the

17

exclusion was ambiguous.  <u>Hanover Bldg. Materials, Inc. v.</u>
<u>Giuffrida</u>, 748 F.2d 1011, 1015 (5th Cir. 1984).  The <u>Hanover</u> case
involved claims for contents under an SFIP after the plaintiff
lumber retailer's storage building flooded, ruining its
inventory.  <u>Id</u>. at 1012.  The building in question was an H-
shaped structure with a roof and walls on two sides covering less
than 25% of its sides.  <u>Id</u>. at 1013-1014  The relevant SFIP
provisions provided coverage for the contents of an insured
building or structure, defined as "a walled and roofed
building,"[4] but only if the contents were "within an enclosed
structure."[5]  <u>Id</u>. at 1013.

The <u>Hanover</u> Court noted that neither the term "enclosed,"
nor the term "walled," was specifically defined to indicate what
constituted enclosure or the extent to which a building must be
enclosed by walls for contents coverage to apply.  <u>Id</u>.  The Fifth
Circuit also noted that FEMA itself had not literally applied the
enclosure requirement to always require complete enclosure (i.e.
totally walled on four sides without aperture) during the period
that these definitions were in effect.  <u>Id</u>.  As a result, the
Fifth Circuit found that the word "enclosed" was ambiguous and
did not have "the plain ordinary meaning of being totally
surrounded, encased, or walled."  <u>Id</u>. at 1014.  In fact, the
<u>Hanover</u> Court noted that the FEMA claims examiners who handled

---

[4]  44 C.F.R. §59.1 (1981).

[5]  Id.

the plaintiff's claim[6] admitted that the standard for determining

"enclosure" under the SFIP was "whether a building was enclosed

as enclosed could be, given the intended use of the building,

even though the structure was not fully enclosed."  Id.

(quotations omitted).  Furthermore, the examiners noted that FEMA

was determining itself at the time whether coverage should be

afforded generally to lumber retailers with similar structures,

because the type of structure at issue was vital to the retail

lumber business.  Id.  Moreover, the Hanover Court held that the

ambiguity of the term "enclosed" was not clarified in the

effective regulations at the time the policy was in effect.  Id.

Those regulations "define[d] 'building' as a 'structure,' and

define[d] 'structure' as a 'walled and roofed building,'" but did

not define the term "walled and roofed building."  Id.

Furthermore, no other regulations or policy provisions gave any

definition for these terms.  Id.  In sum, the Fifth Circuit

concluded that the term "enclosed" was ambiguous in the context

of the SFIP and the relevant regulations:

> Certainly, a building with a roof and walls on all sides
> and with no openings would be enclosed. Certainly, too,
> a building with no roof and no walls would not be
> enclosed. **Just how much of a roof and how many walls are
> needed, however, is unclear**. We cannot say, by referring
> solely to the policy term "enclosed," whether a partially
> enclosed storage building, not subject to further walling
> without destroying its functional purpose, is
> sufficiently or not "enclosed" so that damage to its

---

[6] At the time of the Hanover case, the NFIP was administered
by FEMA and not by private insurers.  748 F.2d at 1012.

contents is within the policy's coverage. Thus, we conclude that the policy term "enclosed" is ambiguous.

Id. (emphasis added).

Similarly, the term "structure" in the SFIP in this case is defined as a "**building** with two or more outside rigid walls and a fully secured roof, that is affixed to a permanent site;" and the term "building" is defined as a "**structure** with two or more outside rigid walls and a fully secured roof, that is affixed to a permanent site." 44 C.F.R. §59.1 (2005); 44 C.F.R. pt. 61, App. A(2), Art. II(A)(6)(a) (2005) (emphasis added). Thus, the SFIP in this case, like the one at issue in Hanover, defines two terms in a circular fashion, so that neither one is specifically and clearly defined. As a result, there is ambiguity in the SFIP with respect to what constitutes a "building" under the policy, especially in light of the common sense understanding that a "building" as a "structure" necessarily includes its foundation. Finally, this ambiguity is apparent on the facts of this case given that DBS sought, acquired, and paid premiums on an SFIP covering the facility that Fidelity now claims should not be covered because it is "entirely . . . over water." Echoing the court in Hanover, it is apparent that due to the ambiguity of the "structure" and "building" definitions, just how much or what part of a building must be over water in order for it to be "entirely" over water to trigger the exclusion is unclear. Additionally, the parties have  not pointed to any definitions, either in the regulations or in other provisions of the SFIP,

20

that clarify this ambiguity.  Accordingly, given the ambiguity in
the SFIP, the exclusion for "buildings" constructed "entirely
. . . over water" should be construed against Fidelity, and DBS
should receive coverage under the SFIP for its flood damaged
property.

It is true that the <u>Hanover</u> Court based its decision and
analysis in part on the fact that FEMA itself had essentially
admitted the ambiguity of the definitions at issue in that case
and also recently amended the regulations and SFIP provisions to
clarify those definitions.  The <u>Hanover</u> Court pointed out that
the phrase "walled and roofed building," which was the regulatory
definition of the word "structure" in the 1982 SFIP pertinent to
the case, was itself undefined and ambiguous.  <u>Hanover</u>, 748 F.2d
at 1014.  This phrase was crucial to the definition of the word
"enclosed" at issue in <u>Hanover</u> because the word "enclosed" was
itself ambiguous, and thus the court was attempting to find other
definitions in the SFIP that might unambiguously clarify the
meaning of "enclosed."  The court went on, however, to suggest in
a footnote that the ambiguity in the phrase "walled and roofed
building" had been corrected in the 1982 revision of the SFIP.
<u>Id</u>. at n.3.  Specifically, the <u>Hanover</u> Court noted that the 1982
revision defined the phrase "walled and roofed building" as "a
building [that] has in place two or more exterior, rigid walls
and the roof is fully secured so that the building will resist
flotation, collapse, and lateral movement."  <u>Id</u>. (citing 44
C.F.R. pt. 61, App. A(2) (1983)).  Thus, at least in dicta, the

21

Fifth Circuit suggested that the ambiguous definition of "walled and roofed building," which itself defined "structure" and thus rendered that definition ambiguous, was clarified by the 1982 revision of the SFIP and the governing regulations.  This dicta from the <u>Hanover</u> case might be read to suggest that the terms "building" and "structure" as used in the SFIP are no longer ambiguous.

Nonetheless, the SFIP and the governing regulations have changed again since the <u>Hanover</u> case, and the current circular definitions of "building" and "structure" are in fact ambiguous as a result of those changes.  Specifically, while "walled and roofed building" was specifically defined in the 1982 revisions as "a building [that] has in place two or more exterior, rigid walls and the roof is fully secured so that the building will resist flotation, collapse, and lateral movement," the phrase "walled and roofed building" is no longer a free-standing defined term in the SFIP, and thus that definition is no longer relevant. Furthermore, the only relevant appearance of the phrase "walled and roofed building" in the 2005 SFIP regulations appears in the definition of "structure" "**for floodplain management purposes**" only.  See 44 C.F.R. §59.1 (2005).  However, the word "structure" "**for insurance purposes**" is defined, with the circular reference to a "building," as "[a] building with two or more outside rigid walls and a fully secured roof, that is affixed to a permanent site."  Id.  As a result, the analysis of the <u>Hanover</u> case is

precisely relevant to the circular and ambiguous definitions of the terms "structure" and "building" in the SFIP at issue in this case.  Therefore, despite the dicta from <u>Hanover</u> suggesting that the terms "building" and "structure" were no longer ambiguous after the 1982 revisions, those terms are ambiguous in the 2005 SFIP and thus the SFIP should be construed in favor of coverage for DBS.

**4) Conclusion**

Despite the inadequacies of DBS's argument for coverage based on the plain language of the SFIP, the ambiguity of the SFIP's definition for "building" in the context of the "entirely over water" exclusion must be construed in favor of DBS. Accordingly,

IT IS ORDERED that DBS's **Motion for Summary Judgment** (Rec. Doc. 36) is **GRANTED.**

IT IS FURTHER ORDERED that Fidelity's **Motion for Summary Judgment** (Rec. Doc. 34) is **DENIED.**

New Orleans, Louisiana this 16th day of December, 2008.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE